UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

FILED

2011 SEP -2 A 9: 18

U.S. DISTRICT COURT
EASTERN DIST. TENN.

_____DEPT. CLERK

| | |
|---|---|
| ABEL SANTIAGO ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | NOS. 2:08-CV-230; 2:01-CR-61 |
| ) | *Judge Jordan* |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Abel Santiago, through his attorney, brings this motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, raising, as grounds for relief, several claims of ineffective assistance of counsel and one claim of prosecutorial misconduct, [Doc. 602 in the criminal case]. The United States has filed a response, arguing that petitioner's claims warrant no relief and that this § 2255 motion should be dismissed. [Doc. 616]. It's arguments are well taken and, for the reasons which follow, Santiago's motion will be **DENIED**.

### I. Standard of Review

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws

of the United States, or that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

A prisoner who is seeking to obtain collateral relief must clear a "significantly higher hurdle" than would exist on direct appeal. *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Thus, Santiago bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

An evidentiary hearing is unnecessary if there are no material issues of fact in dispute or if the record conclusively shows that petitioner is not entitled

to relief under § 2255. An evidentiary hearing is not required if a petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Cordell v. United States*, 2008 WL 4568076, * 2 (E.D. Tenn. Oct. 14, 2008).

Finally, petitioner bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusions, which are not substantiated by allegations of specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes vague conclusory statements without substantiating allegations of specific facts and thereby fails to state a viable claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Ryals v. United States*, 2009 WL 595984, *5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, *1 (E.D. Tenn. July 18, 2008).

## II.  Facts and Procedural History

The summary of the underlying facts is taken from the Sixth Circuit Court of Appeals' opinion issued during Santiago's first direct appeal. *United States*

*v. Santiago*, 135 Fed.Appx. 816, 817-19, 2005 WL 1386468 (6th Cir. June 1, 2005).

Petitioner's conviction arose from the breakup of an extensive organization for the sale of illegal drugs, which was headquartered at a large farm in Cocke County, Tennessee. In 2000, local law enforcement officers and the FBI conducted an investigation. Through means of a court-ordered Title III wire intercept, they collected hundreds of recordings of wire communications among co-conspirators and used those recordings, as well surveillance and confidential informants, to seize shipments of cocaine en route from Atlanta, Georgia to the farm. In mid-June of 2001, FBI officers executed nineteen search warrants at residences and other sites in the area of the farm, finding, *inter alia*: $5,000, several guns, and a large quantity of jewelry in petitioner's residence, as well as $117,000, several more guns, and 800 pounds of marijuana in a co-defendant's residence and vehicle and a house within walking distance of the two residences.

The next month, petitioner and fourteen others were indicted for multiple counts of conspiracy to distribute and of distribution of marijuana and cocaine. In September of 2001, 77-counts of similar crimes were alleged in a superceding indictment against petitioner, his two co-defendants, and thirteen co-conspirators.

Some eleven months later, i.e., August of 2002, petitioner was tried to a jury on evidence consisting of the items found during the seizures (guns, drugs, money, and jewelry); testimony and statements of multiple witnesses, including one confidential informant; and the multitudinous tape-recorded conversations involving drug-dealing. After the prosecution rested, the Court granted petitioner's motion to dismiss several substantive distribution counts. Ultimately, the jury found petitioner guilty of operating a continuing criminal enterprise, conspiracy to distribute over 1,000 kilograms of marijuana, conspiracy to distribute over five kilograms of cocaine, distribution of cocaine, and distribution of 100 kilograms or more of marijuana—all in violation of 21 U.S.C. § 848 and § 841(a)(1). For these offenses, petitioner received a 360-month Guidelines.

Petitioner appealed, and his convictions were affirmed but the sentences were vacated and the case remanded under *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Santiago*, 135 Fed.Appx. 816, 2005 WL 1386468 (6th Cir. June 1, 2005). Petitioner received the exact same sentence on remand and he again appealed—this time unsuccessfully. *United States v. Zuniga*, 228 Fed.Appx. 588, 2007 WL 1451840 (6th Cir. May 7, 2007). On August 8, 2008, there followed this 28 U.S.C. § 2255 motion, raising two main grounds for relief.

5

### III. The Claims

In the first ground, petitioner contends that he received ineffective assistance from his retained trial attorney, Mr. Francis X. Santore. In the second ground, petitioner claims that the attorney for the United States had improper contact with a juror. The claims will be discussed in order.

A. *Ineffective Assistance*

Petitioner charges Mr. Santore with various errors before and during the trial, though he acknowledges that some of the problems in communicating with trial counsel, assisting him in the preparation of a defense, and, possibly, assisting his § 2255 attorney in the preparation of the instant motion, were compounded by the language barrier—petitioner does not understand English—and by petitioner's lack of knowledge of the legal system. Be that as it may, petitioner cites several alleged attorney missteps as amounting to constitutional ineffective assistance.

*1. The Controlling Law.*

The Supreme Court has established a two-part test for determining when assistance of counsel in ineffective. *See Lockhart v. Fretwell*, 506 U.S. 364, 376-79 (1993); *Strickland v. Washington* 466 U.S. 668, 686-87 (1984). First, a petitioner must show that his counsel's errors were so egregious as to render counsel's performance constitutionally deficient, that is, outside the "wide range

6

of professional assistance. *Strickland*, 466 U.S. at 687; *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Strickland*, 466 U.S. at 689. As the Supreme Court explained, in order to show that counsel's performance was deficient, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland,* 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland*, 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

7

2. *Allegations & Analysis*.

Santiago asserts that Mr. Santori made these four attorney errors: 1) failed to make proper preparation for the trial, 2) failed to conduct proper cross-examination and impeachment of the prosecution's witnesses, 3) failed to make a proper objection to the introduction of certain drugs into evidence—drugs which were not at issue in the trial and the admission of which prejudiced Santiago's due process right to a fair trial, and 4) failed to make an adequate investigation into the facts, specifically into the prosecutor's improper contact with the jury, which allegations supply the factual foundation for the next ground. Each alleged error will be discussed in turn.

a. *Inadequate Trial Preparation.* Santiago asserts that counsel inadequately prepared for trial but, as government points out in its response, he has not pointed to anything specific which counsel failed to do but should have done to prepare the case for trial. Without some degree of factual development which focuses the Court on counsel's shortcomings in this regard, the Court is unable to consider whether there were any omissions or acts amounting to a deficient performance on Mr. Santori's part which prejudiced his client's defense.

b. *Questioning of Witnesses.* Counsel's second claimed error involves his purported failure properly to question and impeach the witnesses against Santiago. Again, as the United States argues, Santiago has failed to identify any

8

impropriety in his attorney's cross-examination of government's witnesses, any piece of information which might have been used but was not used as impeachment of a particular witness, or anything used to impeach which should not have been used. Again, there is nothing factual upon which to base a reasoned analysis of this ineffectiveness claim.

    c. *Failure to Object.* As his third illustration of ineffective assistance, Santiago contends that counsel did not make a proper challenge to the admission of certain drugs. Suffice it to say that this allegation, like the preceding ones, is not shored up by specific factual details. For example, petitioner has failed to identify the drugs which he believes should have been attacked by Mr. Santori as inadmissible evidence; explain the proposed basis for such an objection; or supply other factual elaboration to support this instance of alleged ineffectiveness. The Court cannot properly consider the ineffective claim in such a factual vacuum.

    d. *Prosecutorial Misconduct.* As the final supposed attorney error, petitioner points to Mr. Santori's failure to investigate purportedly improper contact between the prosecutor and the jury. As with the previous alleged attorney missteps, this claim is fatally flawed because it lacks any allegations of fact to support it. For example, there is no information as to when the contact

9

occurred or the identity of the person who witnessed the improper contact between the prosecutor and the jurors.[1]

Petitioner's failure to flesh out these skeletal allegations of incompetent counsel with some supporting facts contravenes Rule 2(c) of the Rules Governing Section 2254 Cases, which requires a habeas corpus petitioner to "specify all the grounds for relief which are available" and "set forth in summary form the facts supporting each of the grounds thus specified." *See, e.g., James v. Borg*, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) ("Except for conclusional averments, his petition supplied no factual material upon which to test the validity of his conclusions."). After all, to be entitled to habeas corpus relief, a petitioner must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Section 2254 Rules). "As the burden of overturning the conviction rests on the applicant, he should allege specifically, in cases where material, the uncontradicted evidentiary facts appearing in the record upon which is based his

---

[1] Even if this claim were not devoid of details, it collapses for reasons which appear in the analysis of the following claim, which incidentally, is predicated on the exact same facts as the instant ineffective assistance claim.

10

Case 2:01-cr-00061   Document 633   Filed 09/02/11   Page 10 of 15   PageID #: 192

allegation of denial of constitutional rights." *Brown v. Allen*, 344 U.S. 443, 458 n.6, 73 S.Ct. 397, 408 n.6 (1953).

Because petitioner has not borne his burden to show deficient performance and prejudice resulting from his trial lawyer's actions or omissions, the writ will not issue with respect to his ineffective-assistance claim. *See Reams v. Davis*, 333 F.2d 430, 431 (6th Cir. 1964) ("The unsupported conclusory allegation that appellant was forced to plead guilty, was not sufficient to require the Court to grant a hearing."); *Adamson v. Nash*, 218 F.Supp. 841, 844-845 (D.C.Mo. 1963) (noting than a prisoner should be required to "outline the facts upon which his claim is predicated so that such a claim may be intelligently and fairly dealt with").

B. *Improper Juror Contact*

In his last claim, petitioner contends that, "upon information and belief, . . . the prosecutor made improper contact with the jurors during the trial proceedings," [Doc. 602 at 5]. He further contends that, "during a break in the trial proceedings, witnesses who were present in the courtroom observed the prosecutor come out of the room where the jurors were sequestered during the trial," [*Id.*]. Such improper contact of the prosecution with the jurors during the trial, according to petitioner's lights, tainted the verdict of the jury.

11

This issue served as the basis for petitioner's prior motion to interview the jurors who participated in his trial, [Doc. 626]. In considering the motion, the Court made these findings:

> "Given the layout of the courtroom vis-a-vis the jury room, the court finds that the defendant's allegations are impossible. This court is well acquainted with the layout of the courthouse in Greeneville . . . . In the front of the courtroom there are two doors, one on each side of the judge's bench. Both doors lead to a hallway that runs behind the courtrooms on the fourth floor. There are doors in the hallway that lead to conference rooms, judge's chambers and the jury rooms. There is no way for witnesses in the courtoom to see the actual jury room door. All they can see is the door to the hallway. Lawyers do not have access to this hallway unless they are invited to the judge's chambers or conference room for discussions concerning the progress of the trial," [Doc. 630].

The Court, therefore, has resolved this issue against petitioner, upon the ground that it would have been impossible for any witness, trial attendee, or anyone else in the courtroom to see the prosecutor exit the door of the room where the jury had convened. *See Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 514 (1962) (recognizing that there are "circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection").

Moreover, according to the affidavit of Rick Tipton, the courtroom deputy of the now-deceased district judge who tried this case, the door which opens onto the hallway which provides access to the jury room is locked and can be

12

opened only with an electronic card key, which is kept in the custody of court staff at all times during a trial, [Doc. 616, Attachment 1, Affidavit of Rick Tipton]. Mr. Tipton avers that a courtroom security guard, who is present throughout a trial, permits no one to approach that door, without escort by the courtroom clerk. Mr. Tipton further avers that while, occasionally during trial, the attorneys are called to the judge's chambers, they are escorted at all times by the courtroom deputy and that, if the attorneys at Santiago's trial been summoned from the courtroom to the judge's chambers (which he does not recall happening), he would have escorted them in both directions. Finally, he states that no person other than court staff had access to the jury room during the trial that began on August 13, 2002.

Given the complete absence of facts and circumstances to sustain this claim and the Court's own personal knowledge that the alleged contact with the jury simply could not have occurred, this claim furnishes petitioner no relief.

One last matter remains for discussion. In the § 2255 motion, counsel claimed that further inquiry and investigation into the allegations contained in the motion would be necessary since he had been hired just before the limitations statute expired for the filing of the motion to vacate. Based on petitioner's indigency, communication problem, distance from his § 2255 attorney and the need to determine whether trial counsel met the *Strickland* standards or whether

13

"there was in fact any improper contact by the prosecutor with the jury as alleged in the motion to vacate," Santiago's present attorney sought and was granted the funds to hire an investigator [Docs. 621 & 622]. The Court has heard nothing further concerning the investigator, the investigation, or anything to substantiate either of Santiago's claims.

## IV. Conclusion.

For the reasons indicated above, Santiago's § 2255 motion to vacate, set aside or correct his sentence will be **DENIED** and this action will be **DISMISSED**.

## V. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should Santiago file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a § 2255 case only if she is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Those whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists would debate the correctness of the Court's procedural ruling. *Id.*; *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed Santiago's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Thus, jurists of reason would not conclude the disposition of those claims was debatable or wrong. Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

An appropriate order will be entered separately.

**ENTER**:

/s/ Leon Jordan

LEON JORDAN
UNITED STATES DISTRICT JUDGE